**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IRAIDA JIMENEZ OLIVERAS,** <br><br> Plaintiff, <br><br> v. <br><br> **CAROLYN W. COLVIN, Acting Commissioner of Social Security,** <br><br> Defendant. | Civ. No. 15-cv-8431 (KM) <br><br> **OPINION** |

**MCNULTY, U.S.D.J.:**

    This is an appeal from a final decision of the Commissioner of Social Security denying supplemental security income (SSI) benefits. For the reasons stated herein, the appeal will be denied and the decision of the Commissioner will be affirmed.

    Plaintiff here, Iraida Jimenez Oliveras, applied for SSI benefits on September 20, 2011, claiming a disability onset date of November 11, 2010. The Social Security Administration (SSA) denied her claim on October 28, 2011. Following two motions for reconsideration of that denial, the SSA again denied her application on March 21, 2012. On April 7, 2012, Ms. Oliveras appealed that denial and requested a hearing before an Administrative Law Judge (ALJ).

    On September 23, 2013, a hearing was held before the Hon. Donna A. Krappa, ALJ. (Transcript at R32–56)[1] Ms. Oliveras, who was represented by counsel, appeared and testified with the aid of an interpreter. A vocational expert ("VE"), Rocco J. Meola, also testified. At the end of the hearing, Judge

---

[1]     Citations to pages of the administrative record, filed at ECF no. 11, are in the form "R__".

1

Krappa held the record open for submission of supplemental medical reports, which she received and considered. (R19) By written decision dated May 12, 2014, the ALJ denied the application for SSI, finding that Ms. Oliveras was not disabled within the meaning of the SSA. (R19–31) On June 6, 2014, Ms. Oliveras appealed that denial to the Appeals Council. (R8–10) The Appeals Council, after considering additional evidence (R4–5), denied review on September 9, 2015 (R1–3), rendering the ALJ's decision the final decision of the Secretary.

Ms. Oliveras filed this appeal from the Commissioner's denial of SSI benefits on December 3, 2015. (ECF no. 1) Because the appeal was not filed within the 60 day limitations period, the government moved to dismiss it. (ECF no. 4) In a Memorandum and Order dated May 12, 2016, I applied equitable tolling to the limitations period and denied the motion to dismiss. (ECF no. 9)

The record was filed. (ECF no. 11) Ms. Oliveras then filed her plaintiff's brief ("Pl. Br.", ECF no. 14). The Commissioner filed a brief in response ("SSA Br.", ECF no. 17). [2] The matter is now fully briefed and ready for decision.

## I. STANDARDS, ALJ'S CONCLUSIONS, STANDARD OF REVIEW

### A. The SSA Five-Step Process

To be eligible for SSI benefits, a claimant must meet the income and resource limitations of 42 U.S.C. § 1382. A claimant must also show that he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A); *see, e.g., Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009).

---

[2] Previously, counsel for Ms. Oliveras had filed a Local Rule 9.1 statement of her contentions in support of her appeal (ECF no. 12), and the Commissioner, mistaking it for her brief, had filed a brief in opposition (ECF no. 13). When Ms. Oliveras filed her actual brief, the Commissioner realized the error, and sought and obtained leave to file an amended version of her prior brief. (ECF nos. 15, 16) The operative briefs on appeal are thus the ones cited in text above (ECF nos. 14 and 17).

Under the authority of the Social Security Act, the Social Security Administration (the "Commissioner") has established a five-step evaluation process for determining whether a claimant is entitled to SSI benefits. 20 C.F.R. § 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

**Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. § 416.920(b). If not, move to step two.

**Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* § 416.920(c). If the claimant has a severe impairment, move to step three.

**Step 3:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. (Those Part A criteria are purposely set at a high level, to identify clear cases of disability without further analysis.) If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* § 416.920(d).

**Step 4:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* § 416.920(e)–(f). If not, move to step five.

**Step 5:** At this point, the burden shifts to the Commissioner to demonstrate that the claimant, considering his age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

**B.    The ALJ's Findings**

ALJ Krappa properly followed the five-step process. Her findings may be summarized as follows:

**Step 1**

At step one, the ALJ determined that Ms. Oliveras has not engaged in substantial gainful activity since September 20, 1011. (R 22 ¶ 1)

**Step 2**

At step two, the ALJ found that Ms. Oliveras has the following severe impairments: "a spinal disorder; fibromyalgia; arthritis; and headaches." (R22 ¶ 2)

**Step 3**

At step three, the ALJ determined that Ms. Oliveras does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments, 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (R22 ¶ 3)

**Step 4 – RFC/Past Relevant Work**

At step four, "[a]fter careful consideration of the entire record," the ALJ found that Ms. Oliveras has "the residual functional capacity to perform the *exertional demands* of light work as defined in 20 CFR 416.967(b) except specifically, she is able to: lift/carry 20 lbs. occasionally and 10 lbs. frequently; stand/walk for 6 hours in an eight hour work day; sit for 6 hours in an eight hour work day; and perform unlimited pushing and pulling within the weight restriction given. Moreover, regarding the *postural and environmental* demands of work, I find that the claimant is able to perform jobs: that require occasional use of ladders, ropes, or scaffolds; that require frequent (as opposed to unlimited) use of ramps or stairs; and that require frequent balancing, stooping, kneeling, crouching, and/or crawling. The claimant is only able to perform jobs that do not require her head to be kept in a fixed position." (R23 ¶ 4)

The ALJ concluded that Ms. Oliveras is capable of performing past relevant work as a parking attendant. That job does not require activities outside of her residual functional capacity. (R25 ¶5) Accordingly, the ALJ concluded that she has not been under a disability, as defined by the SSA, since September 20, 2011, the date her application was filed. (R26 ¶6)

4

### C. This Court's Standard of Review

As to all legal issues, this Court conducts plenary review. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual issues, this Court must adhere to the ALJ's findings as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings . . . leniency should be shown in establishing the claimant's disability, and . . . the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal citations and quotations omitted). When there is substantial evidence to support the ALJ's factual findings, however, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610–11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007) (not precedential).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

## II. DISCUSSION

The argument section of Ms. Oliveras's brief on appeal contains two points:

A. The ALJ did not conduct a full residual functional capacity assessment

B. The ALJ should not have found Ms. Oliveras capable of light work.

Those two contentions on appeal focus on the step 4 finding that she possesses the residual functional capacity to perform light, unskilled work, particularly her past relevant work as a parking lot attendant.[3] I conclude that the ALJ's findings contain no legal error and are supported by substantial evidence.

### A. Step 4: RFC

At step 4, the ALJ found that Ms. Oliveras's impairments, although real, do not disable her, but only limit her residual functional capacity to perform any but light, unskilled work. In particular, the ALJ found that she could perform relevant past work as a parking lot attendant. Ms. Oliveras disputes the ALJ's assessment of her RFC, claiming that it did not properly take all of the evidence into account.

---

[3] At step 2, the ALJ found severe impairments consisting of a spinal disorder, fibromyalgia, arthritis, and headaches. At step 3, however, the ALJ found that those impairments, alone or in combination, did not meet or equal a listed impairment. In her Local Rule 9.1 statement of issues (ECF no. 12), the claimant disputed that step 3 finding, but in her formal brief (ECF no. 14) she no longer presses that argument.

> (a) General—(1) Residual functional capacity assessment.
> Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is the most you can still do despite your limitations. We will assess your residual functional capacity based on all the relevant evidence in your case record. (See §§ 404.1512(d) through (e).)
>
> (2) If you have more than one impairment.
> We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not "severe," . . . when we assess your residual functional capacity. . . .
>
> (3) Evidence we use to assess your residual functional capacity. We will assess your residual functional capacity based on all of the relevant medical and other evidence . . . We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations . . . We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons.

20 C.F.R. §§ 404.1545 and 416.945 (2016).

Ms. Oliveras cites medical evidence that she suffers from an impairment or impairments. But the ALJ's decision does not deny that such impairments exist, nor does it gloss over them. The step-by-step analysis, and particularly the RFC, quoted in full at p.4, *supra*, acknowledge the claimant's impairments and find that they very significantly limit the kind of work she can do.

The claimant cannot prevail by pointing to evidence that might support a finding of disability. Her burden here is to show that the ALJ's finding of non-disability was not supported by substantial evidence, a different matter. Of course she may also obtain a remand by showing that the ALJ ignored or failed to deal with evidence. And Ms. Oliveras does assert here that the ALJ failed "to consider and explain [her] reasons for discounting all of the pertinent evidence before [her] in making [her] residual functional capacity determination." (Pl. Br. 27, quoting *Bryan v. Commissioner*, 383 F. App'x 140, 150 (3d Cir. 2010) (quoting *Burnett*, 220 F.3d at 121)).

The *Burnett* claim focuses on the ALJ's alleged failure to deal with evidence of an upper extremity impairment. I must note at the outset, however, that I disagree with one premise of the argument: *i.e.*, that the ALJ did not find any upper extremity impairment. She did: the RFC limits the claimant to lifting or carrying 20 lbs. occasionally and 10 lbs. frequently, and to pushing and pulling within those weight restrictions. (R23 ¶4) The musculoskeletal system is of course interconnected, but those lifting and pushing activities are performed directly with the upper extremities—*i.e.*, the arms and hands.

Ms. Oliveras faults the ALJ's discussion of her claims of pain and her self-reported limitations in the performance of her daily activities. The ALJ, while noting the limitations associated with the claimant's impairments, noted that she handles her own personal care, pays bills, cares for pets, drives her son to school, prepares food, shops, drives, watches television, reads, listens to music, and pays bills. (R25) Ms. Oliveras cavils that the ALJ's opinion omitted qualifying language she had used at times, such as "with help," or "when not in pain." Also included in function reports, she points out, were complaints of difficulty in performing certain tasks because of left arm impairments, pain, and tingling. (Pl. Br. 30)

The ALJ's opinion demonstrates that she carefully considered Ms. Oliveras's complaints of pain and her accounts of her daily activities. That the ALJ focused on Ms. Oliveras's live testimony, rather than her written reports (which are largely cumulative) does not undermine her findings. With regard to facts specifically relating to upper extremity impairments, the ALJ duly noted that Ms. Oliveras claimed to have quit her job because of pain; that she was under the care of a rheumatologist, Dr. Goldberg; that she is able to walk one or two blocks, stand 20-30 minutes and sit 20-30 minutes; that she can lift 10 pounds, but is unable to hold anything for a long period of time; that she takes Lyrica (sometimes prescribed for fibromyalgia), Imitrex (prescribed for migraines), and pain medication; that she has radiating pain from her neck to her head; that she has weakness in her arms and hands. (R23–24)

In short, I can see no important deviation from the message Ms. Oliveras says the ALJ should have carried away from her subjective account, and the message the ALJ did carry away. The ALJ's findings in this regard were largely in the claimant's favor, and provided the foundation for going forward and considering whether the medical evidence was consistent. She found that Ms. Oliveras's complaints were consistent with the impairments, but discounted their severity to some degree in light of the medical evidence. (R24)

I move on to the medical evidence. With specific reference to upper extremity impairments, Ms. Oliveras faults the ALJ's decision for failing to deal with the following medical evidence:

> February 2010 complaints of back, hand, knee and wrist pain and diagnosis of possible synovitis of the hands (citing R345; Ex. 3F (Dr. Ibarbia));
>
> May–June 2010 emergency room visits with left elbow pain and swelling, and diagnosis of arthritis (citing R343–45, 402–03, 311; Exs. 3F (Dr. Ibarbia), 7F (Dr. Argulla), 2F ([progress notes; illeg.]));
>
> February 2011 diagnosis of possible synovitis and positive Finkelstein maneuver of wrists, requiring Kenalog injection (citing R336, Ex. 3F (Dr. Goldberg))
>
> March 2011 positive Tinel's sign, tenderness and limitation on motion of shoulders, but carpal tunnel syndrome and cervical radiculopathy ruled out after 'normal" EMG/NCS (citing R355 Ex. 3F);
>
> November–December 2012 exam revealing diffuse tenderness of shoulders, elbows, wrists, and hands, followed by right subacromial injection (citing R484, 480, Ex. 8F (Dr. Ibarbia));
>
> February 2013 exam revealing deficit in right hand strength and decreased sensation at the right C5 and C6 distributions (citing R473. Ex. 8F (Dr. Ibarbia));
>
> March 2013 similar finding, plus tenderness of shoulders, elbows, wrists, and hands, and positive impingement signs (citing R467, Ex. 8F (Dr. Ibarbia));
>
> March 2013 MRI of right shoulder revealing tendinopathy/tendinitis and associated bursitis, leading to June 2013 repeat subacromial injection and trigger point injections (R467–68, 585, Exs. 8F (Dr. Ibarbia), 10F (Dr. Ibarbia)).

9

(Pl. Br. 28–30)[4]

    I find that the ALJ did give careful consideration to the medical evidence. The ALJ cited, revealed her familiarity with, and substantively discussed the very exhibits cited, and covered their subject matter in substance.

    An upper extremity impairment was not always isolated or distinct in the evidence. That, however, is because the diagnoses tended to be organized by medical condition, rather than by part of the body. Thus upper extremity problems were subsumed in the discussion of fibromyalgia, "a disorder characterized by widespread musculoskeletal pain." *See* Mayo Clinic website, www.mayoclinic.org/diseases-conditions/fibromyalgia/basics/definition/con-20019243. That condition, however, was found non-disabling. Likewise, the discussion of arthritis involved the shoulders and arms, but the condition was found non-disabling. The shoulder problems, too, would potentially affect the use of the upper extremities, but were analyzed and not found severe enough to be disabling. Likewise the neck problems, although the relation to the extremities is less clear. Considered in this light, the ALJ's discussion discharged her duty to analyze the evidence.

    The fibromyalgia, wrote Judge Krappa, was

> diagnosed by Dr. Joseph (Exhibit 11F) and Dr. Ibarbia of New Jersey Physicians (Exhibit 8F).... Examination findings have been consistent with diffuse tenderness in the spine, shoulders, and hips; however, the claimant's range of motion is normal except for limitations in the lumbosacral spine (Exhibits 3F, 5F, 8F, 10F). Clinical findings do not specify any tender points as delineated in the evaluation of fibromyalgia in Social Security ruling 12-2P.

(R24)

    The ALJ also cited the evidence of arthritis, affecting the shoulder and arm, and discussed the extent to which medical evidence did or did not corroborate its severity:

---

[4] It is possible to quibble with Ms. Oliveras's characterization of the evidence. For example, she sometimes omits qualifiers such as "mild" and "moderate" when summarizing the doctors' findings. The larger point, however, is that the ALJ adequately considered the evidence in arriving at her conclusions.

10

> Dr. Goldberg, a rheumatologist at New Jersey Physicians has diagnosed the claimant with arthritis (Exhibits 3F, 5F); however, the results of right shoulder and left elbow x-rays have shown no evidence of bony destructive pathology, fracture or dislocations (Exhibit 1F) and there are no other x-ray results of joints. Laboratory findings have shown normal values for ANA, RA, RF and ESR (Exhibit 3Fk, pgs. 28, 31–33). Additionally, the results of nerve conduction studies ("NCS")/electromyography ("EMG") of the upper extremities showed no evidence of carpal tunnel syndrome or cervical radiculopathy (Exhibit 3F, pgs. 34–35)

(R24)

The ALJ discussed the evidence of neck pain, which at least in some cases might indicate an upper extremity limitation. Not to any severe extent here, however:

> In regard to the claimant's complaints of neck pain, the results of cervical MRI scan performed in February 2013 showed disc herniation at C 4–5 and C 5–6 levels moderately impressing the thecal sac (Exhibit 11F, pg 5), but there is no evidence of nerve root impingement and no evidence of neurological deficits. The results of a lumbosacral MRI scan performed in October 2011 were negative (Exhibit 3F, pg. 33); however, a subsequent MRI scan performed in October 2013 showed moderate disc bulging at L 4–5 level moderately impressing the thecal sac, but no nerve root impingement and no significant spinal stenosis (Exhibit 13 F).

(R24) In the RFC, however, the ALJ ruled that Ms. Oliveras could not perform a job that required her to hold her head still.[5]

Dr. Goldberg, the ALJ noted, prescribed pain medication. A sacroiliac cortisone injection produced only temporary relief, however, and the claimant

---

5   While the case was on review by the Appeals Council, Ms. Oliveras submitted a report of a lumbar MRI on June 26, 2014. This indicated a left herniation of the L4-5 intervertebral disc causing mild stenosis of the left foramen, but no stenosis of the spinal canal (R613). Also submitted was a cervical MRI which indicated a bulge of the C3-4 intervertebral disc, but no significant narrowing and no significant hypertrophy of the facet joints (R611). There was a central posterior herniation of the C4-5 intervertebral disc and a right herniation of the C5-6 disc causing moderate stenosis of the spinal canal (Tr. 612). The Appeals Council reviewed them but concluded that they would not require a remand. (R2) This is insufficiently material, in my view, to require a so-called "sentence six" remand for consideration of new evidence. *See* 42 U.S.C. § 405(g); *Matthews v. Apfel,* 239 F.3d 589, 594 (3d Cir. 2001).

11

refused to attend physical therapy (which she found painful). Overall, Dr. Goldberg described the symptoms as "moderate." (R24)

Ms. Oliveras also faults the ALJ for failing to include any limitation in the RFC related to her headaches. The ALJ considered the relevant evidence, noted that the headaches were not accompanied by any neurological deficit, and noted that they responded to medication, at least to a degree:

> [T]he claimant has been diagnosed by her treating primary care physician, Dr. Rizzo, with migraine headaches; she has been prescribed Fioricet, Imitrex (Exhibit 2F) Treatment record[s] from Dr. Joseph dated March 28, 2013, state that the symptoms of the claimant's migraines are doing better on Keppra (Exhibit 11F, pg. 2). There is no evidence of any associated neurological deficits; moreover, although the claimant testified that she has concentration and memory problems, there is no evidence of these complaints in the record.

(R24–25)

All of these findings were rooted in the evidence. Although no opinion could possibly cite and summarize the hundreds of pages of this lengthy medical record, it is clear that the ALJ reviewed and discussed the opinions and diagnoses of the very doctors cited by Ms. Oliveras now. Indeed, the ALJ accepted those diagnoses and opinions for the most part. The fact remains that none of those doctors stated or implied an opinion that Ms. Oliveras's impairments, alone or in combination, were so serious that they would disable her. Rather, these seem to be chronic health problems with which, unfortunately, many a person has to live and function.

I find it significant that the ALJ, despite the State agency medical consultants' contrary opinion, gave the claimant the benefit of the doubt and found that Ms. Oliveras did suffer from some severe impairments. In doing so, the ALJ specifically alluded to the medical evidence of fibromyalgia, spinal degenerative disc disease, and the reports of the pain management specialists at New Jersey Physicians. (R24, citing exhibits) In a balanced ruling, the ALJ took all of the evidence into account and found that those impairments

substantially limited the work the claimant could do, but did not preclude her altogether from working. Substantial evidence supported that determination.

### B. "Light" Work

Ms. Oliveras next disputes the ALJ's conclusion that she was capable of "light work"—in particular, her prior relevant work as a parking lot attendant.

This contention is really her attack on the RFC in a different guise. What Ms. Oliveras is saying is that, given the medical evidence, her RFC should have been more restrictive (the issue discussed above), and that if it had been, she would have been found incapable of light work, including her former employment.

I have already upheld the ALJ's finding as to the RFC, which did of course shape the ALJ's subsequent findings. The ALJ heard the VE's testimony that, given the restrictions of the RFC, Ms. Oliveras could perform her prior work. That prior job, parking lot attendant (DOT #915.473-010), is performed at a light level of exertion. The ALJ accepted the VE's opinion that the job duties of a parking lot attendant fall within the RFC as she had defined it.[6]

Other evidence points in the same direction. Common sense suggests that the job of parking cars would involve sitting and short walks in alteration. Ms. Oliveras herself suggested that she can, perhaps must, alternate between the two. Her statement that she can walk only a block or two is uncorroborated by other evidence. Indeed, the treating physicians on whose opinions she relies, Drs. Goldberg and Ibaria, *prescribed* walking for exercise as part of their treatment. (*See* R361, 505, 510, 513, 526, 528, 531, 484)

The ALJ's determination that Ms. Oliveras could perform her past relevant work was supported by substantial evidence.

---

[6] Point IV.B of Ms. Oliveras's brief devotes some discussion to the general definition of light work. The VE did testify on that subject. In the end, however, the ALJ did not rely on light work in general, but on Ms. Oliveras's former job as a parking lot attendant. The ALJ made no step 5 finding as to Ms. Oliveras's ability to perform other "light work" jobs that exist in the national economy.

13

## CONCLUSION

For the reasons stated above, the ALJ's decision is AFFIRMED. A separate order accompanies this Opinion.

Dated: March 13, 2017

*[signature: Kevin McNulty]*

**KEVIN MCNULTY**
**United States District Judge**